UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVINE H. LEEN and ALETA LEEN<br><br>Plaintiffs,<br><br>v.<br><br>HAROLD M. THOMAS; MICHAEL RAMSEY; JOHN LANE; and DOES 1-20, inclusive,<br><br>Defendants. | No. 2:12-cv-01627-TLN-DMC<br><br><br><br>**ORDER** |

This matter is before the Court on remand from the Ninth Circuit regarding Defendants Michael Ramsey ("Ramsey"), John Lane ("Lane"), and Harold Thomas's ("Thomas") (collectively, "Defendants") Motion to Dismiss the Fourth Amended Complaint ("FAC"). (ECF No. 116.) This Court previously granted Defendants' motion and dismissed the FAC with prejudice. (ECF No. 120.) Plaintiffs Irvine and Aleta Leen (collectively, "Plaintiffs") appealed. (ECF No. 122.) The Ninth Circuit vacated the judgment and remanded the matter to this Court with instructions. (ECF No. 127.) After carefully considering the Ninth Circuit's instructions and the parties' arguments, the Court again GRANTS Defendants' Motion to Dismiss with prejudice.

///

///

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs own property where they graze cattle. (ECF No. 113 at ¶ 13.) The property contains an irrigation ditch, fed from upstream properties. (*Id*.) Plaintiffs have a water license from the California State Water Resources Control Board, Division of Water Rights (the "Board"), which allows them to divert water from the irrigation ditch at a location specified in the license for the purpose of irrigating their property. (*Id*.)

In October 2002, a California Department of Fish and Wildlife ("CDFW") deputy reported observing individuals clearing out debris and brush from the irrigation ditch. (*Id*. at ¶ 15.) Thomas, an employee of CDFW, and Ramsey, the Butte County District Attorney, were involved in the investigation. (*Id*.) On October 15, 2003, Thomas and Ramsey filed a criminal complaint against Plaintiff Irvine Leen ("Leen") related to the incident. (*Id*.)

Leen alleges that even after he was acquitted of all charges in 2011, Thomas attempted to misuse his authority to convince the Board to unlawfully withhold an amendment to Plaintiffs' water license, for which Plaintiffs had submitted a petition for change in June 2008. (ECF No. 113 at ¶ 16.) Plaintiffs' goal in the petition was to amend the point of diversion and place of use conferred by the existing water license.[1] (ECF No. 72 at 38–44.) In July 2009, the CDFW filed a protest to the petition. (*Id*.) This protest and Defendants' alleged actions opposing Plaintiffs' petition for change are the subject of the instant action.

In May 2012, Plaintiffs brought the instant 42 U.S.C. § 1983 action against Defendants in their individual capacities based on alleged constitutional violations.[2] (ECF No. 113.) In a

---

[1] In a June 2, 2014 order (ECF No. 82 at 2–3), the Court granted a request for judicial notice of several extrinsic documents, including the Board decision and petition for change (ECF No. 72). Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). However, a court may consider extrinsic documents on a Rule 12(b)(6) motion when the parties do not contest the authenticity of the documents and the complaint necessarily relies on their contents. *Id.* Here, the petition for change is central to Plaintiffs' claims. Further, the Court notes that there is no apparent dispute as to the authenticity of the documents provided. Therefore, the Court will consider the relevant extrinsic evidence when necessary.

[2] Since the commencement of this action, Plaintiffs have resolved all disputes with the Board and CDFW. (ECF No. 113 at ¶ 17.)

previous, uncontested order, this Court found that any events occurring prior to May 16, 2010, were barred by the statute of limitations. (ECF No. 110 at 11.) In their FAC, Plaintiffs take issue with Defendants' actions opposing the amendment for the period between March 2011, when Leen was acquitted of the criminal charges, and "potentially" concluding in February 2013, when the Board finally granted the change petition. (*Id.* at ¶ 18.)

On November 4, 2015, Defendants filed the instant motion to dismiss. (ECF No. 116.) Plaintiffs filed an opposition on November 25, 2015. (ECF No. 117.) Defendants replied on December 3, 2015. (ECF No. 118.) As discussed, this Court previously granted Defendants' motion and dismissed the FAC with prejudice. (ECF No. 120.) Plaintiffs appealed, and the Ninth Circuit vacated the judgment and remanded the matter to this Court with instructions. (ECF No. 127.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim … is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

3

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F. 2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims … across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (Ninth Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

Plaintiffs allege Defendants violated their procedural due process, substantive due process, and equal protection rights under the Fourteenth Amendment. In its mandate, the Ninth Circuit instructs this Court to discuss (1) Plaintiffs' procedural due process claim, (2) Plaintiffs' substantive due process claim, (3) Plaintiffs' equal protection claim, (4) Ramsey's individual liability, and (5) qualified immunity. (ECF No. 127.) The Court will address each issue in turn.

#### A. Procedural Due Process Claim

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Defendants argue Plaintiffs cannot succeed in their due process claims because Plaintiffs cannot allege a property interest in a water license or in an amendment to a water license. In opposition, Plaintiffs argue that they have a property interest in their validly approved water license. This Court previously agreed with Defendants and found that Plaintiffs did not possess a constitutionally protected property interest in either their water license or an amendment to that license. On remand, the Ninth Circuit instructs this Court to revisit the issue and "consider whether [Plaintiffs'] application for a change of point of diversion is different for due-process purposes from the water license underlying it." (ECF No. 127 at 3–4.)

As a general matter, a person may have a constitutionally protected property interest in a government benefit, such as a license or permit. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also Groten v. California*, 251 F.3d 844, 850 (9th Cir. 2001). There must, however, be more than "an abstract need or desire" for the benefit to have a property interest in a government benefit. *Roth*, 408 U.S. at 577. There must be "more than a unilateral expectation of it. [A plaintiff] must, instead have a legitimate claim of entitlement to it." *Id*. "State law creates a legitimate claim of entitlement when it imposes significant limitations on the

5

discretion of the decision maker." *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011) (citations and internal quotation marks omitted). The Ninth Circuit has "held that such an entitlement to a government permit exists when a state law or regulation requires that the permit be issued once certain requirements are satisfied." *Id.*

Plaintiffs' due process arguments lack clarity, largely because Plaintiffs continually refer to alleged harms that occurred outside the statute of limitations period. For example, Plaintiffs argue that the Board approved a prior amendment then rescinded that approval three months later, "set[ing] in motion a chain of events which resulted in [Plaintiffs'] inability to use their water rights for almost five years." (ECF No. 117 at 15.) But the alleged rescission of that prior amendment took place in April 2008 and is time-barred. Looking only to harm that occurred within the limitations period — May 16, 2010 through the present — Plaintiffs allege that after Leen's acquittal in 2011, they were deprived of their right to make beneficial use of the irrigation ditch water for their ranching and other irrigation needs. (ECF No. 113 at ¶ 46.) Plaintiffs allege that they believed, "based on repeated threats by Mr. Thomas and representatives of CDFW, that if they used, maintained, or otherwise improved their irrigation ditch, they would be subjected to civil fines and penalties and possibly criminal charges." (*Id.* at ¶ 37.) As the Court understands it, Plaintiffs seem to allege they were effectively deprived of their existing water license while their petition for change was pending.[3]

There is sparse authority on the specific question of whether a person can have a property interest in a water license. In fact, the Court is only aware of one case that involves a water

---

[3] It is unclear whether Plaintiffs also claim a property interest in their desired *amendment* to their water license, the approval of which Defendants allegedly delayed. To the extent that Plaintiffs' claim a property interest in the amendment sought by their petition for change, the Court rejects such an argument. Plaintiffs do not argue that there are "significant limitations" on the Board's discretion in granting a petition for change, nor do they argue that submitting a petition for change "requires that the permit be issued once certain requirements are satisfied." *Gerhart*, 637 F.3d at 1019. To the contrary, it appears that the Board wields considerable discretion in granting or denying petitions for change. *See* Cal. Water Code § 1701 ("At any time after notice of an application is given, an applicant, permittee, or licensee may change the point of diversion, place of use, or purpose of use from that specified in the application, permit, or license; but such change may be made only upon permission of the board."). Thus, the Court concludes that Plaintiffs do not have a property interest in an amendment that has not yet been granted.

license in the due process context. In *Morongo Band of Mission Indians v. State Water Res. Control Bd.*, 45 Cal. 4th 731 (2009), a case the Ninth Circuit cited in its mandate, the California Supreme Court analyzed whether a state water board violated due process by revoking a water license allegedly without a fair tribunal. Notably, the *Morongo* court did not explicitly find or even mention that there was a property interest in the water license. Rather than address the threshold question, the court apparently accepted that the plaintiff had a property interest in the water license and proceeded to the next question of whether the water board denied adequate procedures in revoking the water license. As such, *Morongo* arguably supports the conclusion — or at least the implication — that a water license is a property interest protected by due process.

Yet even assuming that Defendants deprived Plaintiffs of a protected property interest in their water license, Plaintiffs fail to provide any factual allegations as to how Defendants denied Plaintiffs adequate procedures *after* May 16, 2010. (*See* ECF No. 117 at 17.) Plaintiffs allege only that they were unable to present evidence before the Board rescinded the prior amendment in 2008, however, claims related to that rescission are time-barred. (*Id.*) For these reasons, Plaintiffs fail to plausibly allege that they were denied adequate procedures within the statute of limitations period, and the Court GRANTS Defendants' motion to dismiss Plaintiffs' procedural due process claim.

      B.   <u>Substantive Due Process Claim</u>

"To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). "To constitute a violation of substantive due process, the alleged deprivation must "shock the conscience and offend the community's sense of fair play and decency." *Id.*; *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (citation and internal quotation marks omitted). "Where, as here, circumstances afford reasonable time for deliberation before acting, we consider conduct to be conscience-shocking if it was taken with deliberate indifference toward a plaintiff's constitutional rights." *Lewis*, 523 U.S. 833 at 846; *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013).

Plaintiffs refer to several allegations about Defendants' conduct within the limitations

period to support their substantive due process claims. Plaintiffs allege the Board refused to act on Plaintiffs' petition for change until 2012 because in April 2011, Thomas "continued with his behind-the-scenes campaign to disparage" and made "false statements, improper threats, and demands." (ECF No. 113 at ¶ 34.) Plaintiffs allege that following Leen's acquittal in 2011, helicopters typically circled Plaintiffs' house for ten minutes and passengers appeared to take pictures of the irrigation ditch in an attempt "to draw the [Board] into a new criminal prosecution" against Leen. (*Id.*) Plaintiffs allege Thomas falsely informed the Board that Leen was unlawfully impounding water in a dam and attached a photograph from a helicopter flyover taken that month. (*Id.*) Plaintiffs allege that in late May 2011, Thomas again emailed the Board a false accusation that Leen "was caught rebuilding the dam" in 2002. (*Id.*) Plaintiffs allege that Thomas informed them he would not withdraw his protests unless they agreed to unwarranted concessions, and then Thomas later denied that he demanded such concessions. (*Id.* at ¶¶ 35–36.) Plaintiffs allege Thomas and representatives of CDFW threatened Plaintiffs with civil fines, penalties, and criminal charges if they used, maintained, or otherwise improved their irrigation ditch. (*Id.* at ¶ 37.) Finally, Plaintiffs allege Ramsey knew of and ratified Thomas's unlawful conduct. (*Id.* at ¶ 38.)

On June 20, 2012, the Board contacted Plaintiffs' counsel to schedule a field investigation to resolve the issues raised by the District Attorney's office and CDFW. (ECF No. 72 at 14–15.) Plaintiffs allege that on the day before the site investigation, Lane and Thomas tried "one last time to improperly influence" the Board: (1) Thomas allegedly sent a Board member an email in which he attributed another individual's guilt to Leen; and (2) Lane sent a letter to a Board member asking her to order that the "streambed be restored to its former (pre 2002) condition." (ECF No. 113 at ¶ 40.) Plaintiffs add that on November 13, 2012, Thomas urged another colleague at CDFW to write to the Board about CDFW's continued protest to the amendment and request that further conditions be placed on the amended water license. (*Id.* at ¶ 41.) Plaintiffs contend that Thomas and Lane's communications were improper, served no legitimate purpose, and have no basis in fact. (*Id.* at ¶ 40.)

Defendants dispute some of the factual allegations in the FAC. However, even taking the

FAC as true, Plaintiffs' allegations do not shock the conscience.  Although Plaintiffs repeatedly allege that Defendants made false statements, Plaintiffs only give a single example: Plaintiffs allege that in May 2011, Thomas falsely emailed the Board informing them that Leen had been caught rebuilding a dam in 2002.  (ECF No. 113 ¶ 35.)  Moreover, Plaintiffs only offer conclusory allegations that Defendants' protests were unsupported and brought with ill motive.  Notably, it is lawful for any interested person to protest a petition for change.  *See* Cal. Water Code § 1703.1 ("Any interested person, within the time allowed in the notice of petition, or within the time the board may allow for good cause shown, may file with the board a written protest against approval of the petition.").  As a whole, it does not shock the conscience that county prosecutors and CDFW employees filed protests, investigated Leen's property, threatened to "aggressively prosecute" illegal acts, and informed the Board about the investigation.

Plaintiffs' factual allegations do not support a plausible claim that Defendants acted "with deliberate indifference toward a plaintiff's constitutional rights."  *Lewis*, 523 U.S. 833 at 846.  Accordingly, Plaintiffs fail to plausibly allege Defendants' conduct shocked the conscience, and the Court GRANTS Defendants' motion to dismiss Plaintiffs' substantive due process claim.

### C. Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  Normally, to state an equal protection claim "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).  The Supreme Court has also "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Defendants argue that Plaintiffs fail to identify a sufficiently similar individual.  In

opposition, Plaintiffs invoke the "class of one" theory. More specifically, Plaintiffs allege Defendants targeted them "in order to harass and punish" them for "refusing to bend to Mr. Thomas's will and for prevailing in the criminal case." (ECF No. 113 at ¶ 49.) Plaintiffs also assert Defendants lacked a rational basis for their protests to the Board, alleging Defendants made protests they "knew or should have known" were false or meritless and did so to punish Plaintiffs for failing to "consent to improper regulatory demands." (*Id*. at ¶ 54.) Plaintiffs allege the Board has not refused to process applications or denied water licensing rights to other similarly situated persons in farming regions of California, and that the process is typically a simple, prompt, and routine procedure. (*Id*. at ¶¶ 47, 49, 52.)

Plaintiff relies primarily on two Seventh Circuit cases to support their "class of one" theory. In *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012), the plaintiff brought a "class of one" discrimination claim after receiving twenty-four bogus parking tickets within a year, all written by officers from a specific unit of the Chicago Police Department. *Id.* at 749. Because the plaintiff failed to identify a similarly situated individual, the district court granted judgment for the City. *Id.* The Seventh Circuit reversed, explaining, "On these unusual facts — many baseless tickets that were highly unlikely to have been a product of random mistakes — [plaintiff's] general assertion that other persons were not similarly abused does not require names or descriptions in support." *Id.* at 748–49.

In *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013), the court reiterated that "a clear showing of animus, absent a robust comparison to a similarly situated individual, may sustain a class-of-one equal protection claim." In *Swanson*, the plaintiff moved next door to the mayor of the city. *Id.* at 781. Plaintiff obtained a building permit and decided to build a three-foot fence between his property and the mayor's property. *Id.* The mayor "did not like this situation and used his position to harass" the plaintiff. *Id.* at 782. Even though the plaintiff had identified a similarly situated individual, the court found that all the plaintiff *needed* to show was "that harassment, yelling, arbitrary denials and frivolous litigation do not normally follow requests for fence permits." *Id.* at 785.

Plaintiffs essentially argue that it is unnecessary under Seventh Circuit precedent to allege

specific facts about similarly situated individuals because Defendants' animus is clear.  The Court disagrees for two reasons.

First, Plaintiffs fail to cite any Ninth Circuit authority on point.  To the contrary, courts in this circuit have "enforce[d] the similarly-situated requirement with particular strictness when the plaintiff invokes the class-of-one theory." *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) (citation omitted) ("Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."); *compare Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 935 F. Supp. 2d 968, 983–84 (E.D. Cal. 2013) (concluding that plaintiff mining operators adequately pleaded a "class of one" equal protection claim because "[i]nstead of asserting generally that they were treated differently, plaintiffs have described two other [mining] operators who were treated differently as to the salient characteristics"); *with Jardine-Byrne v. Santa Cruz Cty.*, No. 5:16-CV-03253-EJD, 2017 WL 5525900, at *4 (N.D. Cal. Nov. 17, 2017) (finding allegations that other library patrons were allowed to bring in office equipment without losing their library privileges were "conclusory and fail to establish that the other Library patrons were identical in all relevant respects to Plaintiff or directly comparable in all material respects").  Indeed, "[s]trict enforcement of the similarly-situated requirement is a vital way of minimizing the risk that . . . the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Warkentine*, 152 F. Supp. 3d at 1294 (citation and internal quotation marks omitted).

Second, even if the Court considers Plaintiffs' Seventh Circuit precedent, this case is distinct from the unusual factual scenarios in *Geinosky* and *Swanson* where animus could be inferred by the defendants' extreme, overt conduct.  The Court has already described Plaintiffs' factual allegations about Defendants' relevant conduct at length.  Those factual allegations do not support even a reasonable inference that Defendants' conduct lacked a rational basis, much less that Defendants acted with blatant animus.  As such, Plaintiffs' reliance on *Geinosky* and *Swanson* is unavailing.

In sum, Plaintiffs fail to identify even one other similarly situated individual.  Therefore,

11

Defendants' motion to dismiss the equal protection claim is GRANTED.

### D. Individual Liability for Ramsey

Defendants argue Plaintiffs have failed to plead sufficient facts to recover against Ramsey in his individual capacity. In opposition, Plaintiffs argue that Ramsey, Thomas's supervisor, ratified and supported Thomas's open, known, and unlawful interference with Plaintiffs' use and enjoyment of their property.

"Liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1219 (E.D. Cal. 2015) (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)). While *respondeat superior* liability does not attach to a § 1983 claim, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violation [of subordinates] and failed to act to prevent them.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Here, the bare accusation that Ramsey knew of Thomas's actions is insufficient to state a plausible claim that he authorized, directed, or ratified any of the allegedly unlawful conduct. The Court also notes that Plaintiffs have had numerous chances to bring a cognizant claim against Ramsey and have repeatedly failed to allege sufficient facts to state a claim against him.

Accordingly, Defendants' motion to dismiss Plaintiffs' claims against Ramsey in his individual capacity is GRANTED.

### E. Qualified Immunity

Even if Plaintiffs adequately pleaded their constitutional claims, the claims must be dismissed with prejudice based on qualified immunity.

A court may grant a dismissal if it can determine, based on the complaint itself, that qualified immunity applies. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016). "In § 1983 actions, the doctrine of qualified immunity protects city officials from personal liability in their

individual capacities for their official conduct so long as that conduct is objectively reasonable and does not violate clearly-established federal rights." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 964 (9th Cir. 2010). Qualified immunity is evaluated under a two-step test: (1) whether facts alleged, taken in the light most favorable to the injured party, show the defendants' conduct violated a constitutional right; and (2) whether the right was clearly established. *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc).

"The inquiry of whether a right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Cmty. House, Inc*, 623 F.3d at 967 (citation omitted). "For the law to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (citation omitted). "To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Id.* "In the absence of binding precedent, courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established." *Id.* "It is not necessary that the very action in question has previously been held unlawful, but in the light of preexisting law the unlawfulness must be apparent." *Id.* (citation and internal quotation marks omitted). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 967–68.

This case involves novel issues. Neither party cites — nor can the Court locate — any authority that mirrors the specific facts or legal issues in this case. As discussed, *Morongo* appears to be the only case that touches on whether a water license even qualifies as a property interest for due process purposes, and *Morongo* is factually distinct from this case and does not address the property interest issue explicitly. There is a similar lack of authority as to the equal protection claim. Based on the lack of any preexisting law as to these specific claims, the alleged unlawfulness of Defendants' conduct is not apparent. Further, the fact that Defendants were legally allowed to protest the amendment to the water license weighs in favor of finding that the rights at issue were not clearly established. *Grossman*, 33 F.3d at 1209 ("Courts have . . . held that the existence of a statute or an ordinance authorizing particular conduct is a factor which

13

militates in favor of the conclusion that a reasonable official would find that conduct constitutional."). Put simply, it would not have been clear to a reasonable official that it was unlawful to take the alleged actions that purportedly interfered with the issuance of an amendment to a water license and restricted the use of the underlying water license while the amendment was pending. Therefore, it is apparent from the FAC that Defendants are entitled to qualified immunity as to all Plaintiffs' claims.

Having already determined that Plaintiffs fail to state a plausible procedural due process, substantive due process, or equal protection claim, the Court also finds that qualified immunity provides an independent basis to grant Defendants' motion to dismiss. Moreover, "[a] district court acts within its discretion to deny leave to amend when amendment would be futile." *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000). The Court notes that this is Plaintiffs' Fourth Amended Complaint, and the thrust of Plaintiffs' claims is largely unchanged despite several amendments. Based on the novelty of Plaintiffs' claims, the Court finds that further amendment would be futile because qualified immunity inevitably will shield Defendants from liability. Therefore, the Court declines to grant leave to amend.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint with prejudice. (ECF No. 116.) The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

Dated: March 23, 2020

Troy L. Nunley
United States District Judge